IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$47,000 IN UNITED STATES CURRENCY,<br>and<br>ONE 2017 TOYOTA TUNDRA,<br>Defendants,<br><br>v.<br><br>WILLIAM LEE MANNS,<br>Claimant. | Case No. 19–CV–00551–JPG–RJD |

## ORDER

### I. INTRODUCTION

The Government brought this civil forfeiture action after seizing a 2017 Toyota Tundra and $47,000 from Claimant William Lee Manns pursuant to 21 U.S.C. §§ 881(a)(4) and 881(a)(6), respectively. The Government contends that the property was used in connection with a controlled substance offense.

Before the Court is Claimant's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15). Accepting all facts alleged in the Government's verified complaint as true, the Court **DENIES** Claimant's motion.

### II. PROCEDURAL & FACTUAL HISTORY

According to the verified complaint and the attached declaration by Task Force Officer ("TFO") Larry Brantley, TFOs Brantley and Kyle Waddington stopped Claimant on December 27, 2018, for improper lane usage on I-70 in Madison County, Illinois. (ECF No. 1–1 at 1). Claimant informed TFO Waddington that he was from California and was visiting his family in Maryland for the holidays. (ECF No. 1–1 at 1). He said he was in a hurry to get back to California but for no specific

reason. (ECF No. 1–1 at 2). When asked about his travel dates, Claimant informed TFO Waddington that he left California "around Christmastime" and left Maryland "around Christmastime." (ECF No. 1–1 at 1). Claimant's vehicle smelled of burnt marijuana. (ECF No. 1–1 at 2). Viewing these circumstances as suspicious, coupled with Claimant's five previous arrests for drug possession, "the TFOs believed that [Claimant] could be involved in criminal activity." (ECF No. 1–1 at 2–3).

Claimant denied having illicit drugs or large sums of currency in his vehicle and consented to a search. (ECF No. 1–1 at 3). In the passenger-side compartment, TFO Waddington "located a bundle of United States currency wrapped inside aluminum foil inside a backpack." (ECF No. 1–1 at 3). When confronted with the finding, Claimant admitted that there was more cash located in a suitcase in the back seat. TFO Brantley located the suitcase and discovered "five aluminum foil bundles of United States currency" in the inner liner. (ECF No. 1–1 at 4). TFO Waddington gave Claimant a <u>Miranda</u> warning and arrested him. (ECF No. 1–1 at 4).

On the way to the Fairview Heights DEA Office, Claimant revealed—unprompted—that the cash totaled $47,000. (ECF No. 1–1 at 4). When asked how he received the money, Claimant stated that "multiple family members" gave him it to purchase "a plot of land for his family to have and to use for hunting and fishing." (ECF No. 1–1 at 4).

When Claimant arrived at the Fairview Heights DEA Office, he was reminded of his <u>Miranda</u> rights and was interviewed by Group Supervisor Robert Eisenbarger and Special Agent Jarret Neff. (ECF No. 1–1 at 5). Claimant stated that he left California on December 15, arrived in Maryland on December 19, and departed on December 26. (ECF No. 1–1 at 5). He further stated that the cash belonged to his stepfather. (ECF No. 1–1 at 6). Later in the interview, he "changed his statement and advised that the United States currency belonged only to him and not his stepfather." (ECF No. 1–1 at 6). Claimant was also observed deleting text messages from his cell phone after consenting to a

search. (ECF No. 1–1 at 7). Shortly thereafter, Claimant requested a lawyer before answering any further questions, and the interview ended. (ECF No 1–1 at 7).

After the interview, DEA Resident Agent in Charge Michael Rehg and IRS Special Agent Jason Bamvakais conducted a phone interview with Claimant's stepfather. (ECF No. 1–1 at 7). He stated that Claimant arrived at his home in Maryland on December 22 and left the following day. (ECF No. 1–1 at 7). The stepfather also stated that he loaned Claimant $500 to get back to California because Claimant told him that he lost his wallet, and that was the last time they saw one another. (ECF No. 1–1 at 7). He denied giving Claimant $47,000 and stated that there was "no way" either he or his wife had "that type of money" to give. (ECF No. 1–1 at 8).

Later that day, TFOs Brantley and Waddington enlisted Caseyville Police Department K9 Officer Cody Wiley to conduct a sniff on the seized cash. (ECF No. 1–1 at 8). A sample was placed in a clean, unused paper bag and set alongside three other bags. (ECF No. 1–1 at 8). K9 Officer Wiley "appeared distracted and not focused on the sniff," and he was not alerted to the seized cash. (ECF No. 1–1 at 8). The next day, Madison County K9 Deputy Kyle Doolen performed a new sniff and was immediately alerted to the seized cash. (ECF No. 1–1 at 8–9).

The Government launched this civil forfeiture action on May 28, 2019. It alleges that the seized 2017 Toyota Tundra and $47,000 were used in connection with a controlled substance offense, violations of 21 U.S.C. §§ 881(a)(4) and 881(a)(6), respectively. (ECF No. 1). Claimant answered the complaint, (ECF No. 14), and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 15).

### III. JURISDICTION

The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 (proceeding commenced by the United states) and 1355(b)(1) (civil asset forfeiture proceeding brought under an

Act of Congress). Venue is proper in the Southern District of Illinois because the property at issue was seized in this district. See 28 U.S.C. § 1395(b).

**IV.     LAW & ANALYSIS**

As a preliminary matter, the Court will consider Claimant's Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings because it was filed after service of the answer. Rule 12(b) motions must be filed before a responsive pleading is served. FED. R. CIV. P. 12(b). And an out-of-time (post-answer) Rule 12(b)(6) motion to dismiss may be treated as a Rule 12(c) motion for judgment on the pleadings. See Saunders-El v. Rohde, 778 F.3d 556, 559 (7th Cir. 2015). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." N. Ind. Gun & Outdoors Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998). Claimant filed an answer at 11:53 AM, (ECF No. 14), and a motion to dismiss at 11:55 AM, (ECF No. 15). The answer was served immediately upon the Government through the Court's electronic filing system. Accordingly, the Court will consider the Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings because it was filed after service of the answer.

With that said, recharacterizing Claimant's motion has little effect. Rule 12(c) motions are governed by the same standards as Rule 12(b)(6) motions, Adams v. City of Indianapolis, 742 F.3d 720, 727–28 (7th Cir. 2014), and the answer adds little to the record.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the [claimant] is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2007). The Court must accept all allegations in the complaint as true. Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Civil asset forfeiture cases are government by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983(c)(1). See also FED R. CIV. P. SUPP. R. A(1)(B). The complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." FED R. CIV. P. SUPP. R. A(1)(B). It is the Government's burden to "establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). This burden is "higher than mere probable cause." In re $174,000 in U.S. Currency, 320 F.3d 658, 662 (7th Cir. 2003). Furthermore, where "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C § 983(c)(3).

The Seventh Circuit in In re Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars examined the "totality of the circumstances" in determining whether the Government met its burden for civil asset forfeiture. 403 F.3d 448, 455 (7th Cir. 2005). DEA agents were alerted when the claimant was found with nearly $2,000 in a duffel bag at Chicago's Midway Airport. Id. at 450. Another nearly $29,000 was found stuffed in a girdle that he was wearing underneath his clothes. Id. at 451. A K9 sniff was conducted after the cash was placed in a suitcase and set alongside several empty suitcases. Id. The claimant's cash was identified. Id. In affirming the district court's grant of summary judgment in favor of the Government, the Seventh Circuit gave probative weight to the K9's alert. Id. at 460. But the court also looked to the totality of the circumstances and indicated other suspicious factors, such as the claimant's false explanations regarding the source of his funds and the claimant's nervousness and evasiveness. Id. at 467–70 ("Taken together with [the K9's] positive alert, the

multitude of factors in the aggregate sufficiently establish a substantial connection between the cash hoard and illegal narcotics activity.").

Claimant argues that the facts enumerated in the complaint are insufficient to state a claim for forfeiture because he was not found in possession of drugs or other evidence suggesting "any sort of drug transaction or sale." (ECF No. 15 at 5). But he fails to address the K9 sniff that detected traces of narcotics, nor does he explain why the cash was wrapped in aluminum foil. The Seventh Circuit rejects the currency-contamination theory to K9 sniffs, and district courts are instructed "that a properly trained dog's alert to currency should be entitled to probative weight." Id. at 459; see, e.g., In re Funds in the Amount of Forty-Five Thousand Fifty Dollars, No. 06 C 6948, 2007 WL 2323307, at *5 (N.D. Ill. Aug. 9, 2007) (finding that K9-sniff evidence "adequately alleges a substantial connection between the seized currency and illegal narcotics"). Here, K9 Deputy Doolen immediately detected narcotic odor and identified the seized cash as the source. (The Court accepts as true the complaint's assertion that K9 Officer Wiley was not alerted to the seized cash because he was distracted and not focused.) Additionally, the way the seized cash was packaged—wrapped in aluminum foil—is highly suspicious and may support an inference that it was related to narcotics trafficking. See In re $42,500 in U.S. Currency, 283 F.3d 977, 982 (9th Cir. 2002) (cash wrapped in cellophane); In re $252,300.00 in U.S. Currency, 484 F.3d 1271, 1274–75 (10th Cir. 2007) (cash wrapped in plastic bags); In re $242,484.00, 389 F.3d 1149, 1162 (11th Cir. 2004) (cash wrapped in paper and plastic wrap) ("Wrapping the cash in a cellophane-type material . . . added nothing to [the claimant's] ability to transport the cash, but it did enhance her chances of getting it past drug-sniffing dogs."). And a claimant need not to be found in actual possession of drugs for the Government to state a claim for civil asset forfeiture. See In re Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d at 455. In short, the Government's allegations of suspicious behavior, coupled with the K9-sniff evidence, are enough to support a reasonable inference that it will meet its burden at trial.

Moreover, the totality of the circumstances surrounding Claimant's travels lead to the reasonable conclusion that the cash was substantially connected to illegal drug trafficking and properly subject to forfeiture. Claimant informed the TFOs that he left California on December 15 and stayed with his family from approximately December 19 to 25. Conversely, his stepfather maintained that Claimant arrived on December 23 and left the next day. This inconsistency leaves several days unaccounted for—"most of his travel itinerary was" *not* "confirmed by his stepfather." (ECF No. 15 at 5). Additionally, Claimant initially told TFO Waddington that the cash was given to him by "multiple family members"; later, at the start of the interview, he stated that the cash belonged to him and his stepfather; and at the end of the interview, he stated that the cash belonged to him alone. Moreover, Claimant's stepfather asserted that in "no way" did the family have "that type of money" to give. Viewed in the aggregate, the Government's complaint describing Claimant's evasive behavior—from changing his story regarding the source of the funds to deleting text messages off his cell phone—states a plausible claim to relief.

## V. CONCLUSION

The Court **DENIES** Claimant's Motion to Dismiss for Failure to State a Claim.

**SO ORDERED.**

**Dated: Wednesday, October 2, 2019**

S/J. Phil Gilbert
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
